[No 2156. Decided June 30, 1896.]

EDWARD P. FOURNIE, *Respondent*, v. B. P. SHEPARD, *Defendant*, N. W. BUSH, *Appellant*.

### TRUSTS — CREATION AND EXTINGUISHMENT.

Where a voluntary association has been formed, known as the Fishermen's Union, for the purpose of maintaining the price of fish, which were to be sold through a committee, moneys advanced for the fish by a purchaser do not become the joint property of the

members of the union to be held in trust for distribution among them.

Where money of an association, held in trust by one member thereof, has been paid out to another party, its trust character is, in the absence of fraud, thereby lost, and cannot be enforced as against such third party.

Appeal from Superior Court, Chehalis County.— Hon. MASON IRWIN, Judge.   Reversed.

*Bush & Coons*, for appellant.

*William O. McKinlay*, for respondent.

The opinion of the court was delivered by

HOYT, C. J.— Many reasons are set forth in the appellant's brief for the reversal of the judgment entered in this action.   Some are founded upon the rulings of the court upon questions raised on the allegations of plaintiff's complaint, and some upon questions which arose during the trial of the cause; but the conclusion to which we have come as to the merits of the plaintiff's claim, as made to appear from the whole record, makes it unnecessary for us to enter into details.

Plaintiff in behalf of himself and numerous other parties sought to assert rights to certain moneys which it was alleged were held by the defendants in trust for them, and the only reason why it was claimed that their joint interest in the money could be asserted in a single action brought by the plaintiff for their benefit was that they were all members of what was known as the "Fishermen's Union."   But it was nowhere alleged that such Fishermen's Union was a corporation or a copartnership, or that it had any legal existence whatever.   On the contrary, facts were made to appear, both from the pleadings and

proofs, which clearly showed that such union was a purely voluntary association, having no legal status whatever. It is true there was testimony tending to show that they had combined for the purpose of maintaining the price of fish, and that a committee appointed for that purpose had agreed to dispose of all the fish which the several members of the union might catch; but, in the absence of some binding organization known to the law, no member of the union could have been legally bound by the agreement so entered into. There might have been a moral obligation on the part of the several members of the union to abide by the arrangement between them, and on the part of the body collectively to adhere to the agreement entered into in behalf of the union by the committee; but, unfortunately for the claim of the plaintiff, the law has not yet reached that advanced stage where every moral obligation creates a legal liability.

There was no joint contractual relation shown to exist between the one to whom the fish were sold and delivered and the members of the Fishermen's Union. The only legal obligation which was assumed by the one who so purchased the fish was to pay the owner for them either the agreed price or what they were reasonably worth, and there was no joint owner of the whole of the fish furnished by all of the members of the union. Either the fish became the property of the committee, and they liable to each of the fishermen for what they had furnished, or those furnished by each fisherman remained his property until delivered by the committee to the person to whom they were sold. In one case he would derive title from the committee and be liable to it or its members for all of the fish; in the other to each fisherman for the fish fur-

nished by him.   In either case the transaction created
no liability on his part to the Fishermen's Union for
all or any part of the fish.   Hence, none of the money
advanced, or to be advanced for the purchase of the
fish became the joint property of the members of the
Union to be held in trust or otherwise by any person
whatever.

It follows that the trust which was sought to be en-
forced as to the money alleged to have been in the
hands of the defendants did not, and from the nature
of the transaction could not, have existed.   Beside,
the undisputed proofs showed that as between John-
son and Shepard, Shepard represented the Fisher-
men's Union, and, if he held this money in trust at
all, held it adversely to Johnson and for the Fisher-
men's Union, hence in any settlement which he made
with Johnson, he would represent such Union and it
would be bound by his action unless there was a com-
bination shown between him and Johnson to defraud
the Union.   This being so, the settlement which was
shown to have been had between Shepard and John-
son by himself or through the agency of N. W. Bush
was, in the absence of fraud, binding not only upon
Shepard but upon the Fishermen's Union which he
represented, and the money which through such set-
tlement was obtained by Johnson or by Bush as his
agent would thereafter be held adversely not only to
Shepard but also to the Fishermen's Union, and as
there was an express finding by the court at the close
of plaintiff's case that no fraud had been shown, it
follows that even if this money had been so held by
Shepard in trust for the Fishermen's Union that such
trust could have been enforced in the courts against
him, the trust character of the funds was lost when

without fraud they were paid by Shepard to Johnson or to Bush as his agent. The undisputed proof showed that Shepard was acting for the Fishermen's Union as its agent, that Johnson made claim to the money in his hands, and that such claim was adverse to the claim of such Union. Its adjustment without fraud would take from any funds, which might by virtue of such adjustment have been paid to Johnson, their trust character, and Johnson would hold them adversely to Shepard and to the Union which he represented.

For either one of the reasons above set out the undisputed proofs showed that the defendant N. W. Bush did not hold any funds which had come into his hands in trust for the plaintiff or his associates. The judgment will be reversed as to the appellant and the cause remanded with instructions to dismiss the action as to him. Appellant will recover his costs in both courts.

DUNBAR, ANDERS, SCOTT and GORDON, JJ., concur.